# COMMON PLEAS OF LACKAWANNA CO.

## SMITH ET AL *vs.* ACKERMAN.

FIRST—The time for demanding the exemption is at the levy, or, at latest, before advertisement of the sale, unless absence or other good cause be shown to excuse the delay.

SECOND—A waiver of exemption in favor of one creditor is not, ipso facto, a fraud on others; especially when the waiver is contained in the instrument creating the contract obligation of the debtor.

THIRD—Among creditors having existing liens upon the same property, the law, and not the will of the debtor, regulates their priority.

Rule to show cause why appraisement shall not be set aside, and appraisement disallowed.

Opinion by HANDLEY, J.

Mead & Benedict obtained judgment against Wolf Acker_man, with waiver of inquisition, exemption and stay of exe_cution.   Upon this judgment execution was issued at 8:30 and placed in the hands of the sheriff, October 25th, 1878, A.M. November 30th, 1878, counsel for the plaintiffs stayed this execution.   The present plaintiffs obtained judgment against Ackerman, and thereupon issued execution. This execution was placed in the hands of the sheriff October 24th, 1878, at 4:30 P. M.   The sheriff, under this execution, levied upon the personal property of the defendant, and fixed December 6th, 1878, at 10 A. M., for the sale thereof.   The defendant gave the sheriff written notice that he claimed the benefit of the Act of Assembly of the 9th day of April, 1849, entitled, "An act to exempt property to the value of $300 from levy and sale on execution and distress for rent." The sheriff on the 18th day of December, 1878, appointed appraisers, and appraised the property levied on, and fixed the value thereof at $148.25. The notice claiming exemption is not dated, but the sheriff in his depositions says, that the defendant filed a paper with him claiming his exemption; that he received it on

Monday, December 2nd, 1878, in the forenoon; that there
are circumstances which make him fix that time; that
under this claim he made the appraisement.  On cross-
examination the sheriff stated that the defendant's prop-
perty had been advertised previous to his receiving notice
for exemption.  After the questions involved in this case
were argued, counsel for the defendant filed his affidavit,
alleging that since the argument he had learned from the
defendant that the demand for the benefit of the $300
act, was made by the defendant when the sheriff first de-
manded payment upon the execution in the present case;
that counsel for said Ackerman was not aware of this
fact when the case was first argued, and therefore prayed
the court to order this case re-argued.  This prayer was
allowed, and the case re-argued.  The depositions of the
defendant Ackerman were then read.  Mr. Ackerman
says in his depositions, that the deputy sheriff first told
him that there was an execution out against him; that the
deputy asked him where he resided and wanted to levy
on his furniture; that he told the deputy that could not
be done, because he did not have $300 worth of furniture,
and that he claimed the benefit of the exemption law.
*   *   *   *   *   After the sheriff had advertised he ser-
ved a written notice on the sheriff claiming the benefit of
the exemption law.

Under this showing we have two questions presented
for our consideration.  The first is, whether the exemp-
tion was claimed in time?  The second is, whether the
junior execution, having a waiver of exemption, operates
in favor of the plaintiffs' writ based upon a judgment
with no waiver?  It may be conceded, that if the defen-
dant made a parol demand, and gave verbal notice that
he claimed the benefit of the exemption at the time and
in the manner stated in his depositions, he is in time.
The cases show that the time for demanding the exemp-
tion is at the levy, or, at latest, before advertisement of
the sale, unless absence or other good cause be shown to
excuse the delay.  Gilleland et al vs. Rhoads, 10 Casey,
190; Diehl vs. Holben, 3 Wright, 217; Dieffendefer vs.
Fisher, 3 Grant, 81; Strouse's executors vs. Becker, 8

Wright, 208; Yost vs. Heffner, 19 P. F. Smith, 68.

The fact that Ackerman did notify deputy Reynolds that he claimed the benefit of the exemption law, is not disputed. In pursuance of either the verbal or written notice the sheriff performed his duty. If the appraisement was made in pursuance of the written notice, then the claim cannot be allowed. If, however, the appraisement was made and the exemption allowed under the verbal notice, then this rule will have to be disharged, unless the law will allow the second question in this case to be answered in the affirmative. The Mead and Benedict execution was the first out as we have already stated. There is attached to this execution a blank notice of sheriff's sale. This notice contains the names of the several articles mentioned in the Smith execution. It will, however, be borne in mind that the Smith execution issued and was placed in the hands of the sheriff on the 24th day of October, whilst the Mead and Benedict execution, which contained the waiver, was not issued and placed in the hands of the sheriff until the 25th day of October. It is now contended by the plaintiffs, that, conceding the demand for the benefit of the exemption law to have been made in time, yet, the defendant is not, under the law, entitled to the exemption claimed, because the junior execution in this case having a waiver of exemption, it operated in favor, also, of the plaintiffs' writ. The sheriff's levy and return on the Smith writ, show that it was by virtue of a writ of fi. fa., No. 2, Feb. Term,1878, that he had siezed and taken in execution the property therein described. In the case of Thomas's Appeal, 19 P. F. Smith, 121, it was held that every time a debtor waives his exemption of the $300 secured to him by the act of 1849, and judgment happens to be entered upon the bond or note containing the waiver, it does not disable him from claiming his exemption against all execution creditors who levy on his goods. A waiver of exemption in favor of one creditor is not, *ipso facto*, a fraud on others; especially where the waiver is contained in the instrument itself, creating the contract obligation of the

debtor. A waiver may be given for a consideration of the utmost importance to the interests of the debtor. There is, therefore, no good reason for striking down the debtor's exemption in favor of a creditor to whom he has made no concession. Why does not the law so clearly laid down in the appeal of Thomas control the question at issue in the present case? The depositions of the sheriff and his deputy do not show that a levy was made upon the Mead and Benedict writ. Hence, when the writ was stayed by counsel it became a defunct writ, and the sheriff had nothing more to do but to return it. This the sheriff did, but without date, which is a practice not to be commended. All returns and all public acts by officials ought to bear date, not alone for self-protection, but for the protection of the interests of all interested parties. The staying of the senior writ left nothing in the sheriff's hands upon which he could proceed against the defendant but the junior writ. The rule of law is, that, among creditors having existing liens upon the same property, the law regulates their priority, and not the will of the debtor. Hence, if in consequence of his waiver he is not able to take the fund out of court, but the $300 must remain in custody for distribution among the creditors, they, among themselves, must be governed by their priority as fixed by law. Here there can be no question of lien. No other person had a lien against the property in question, except the plaintiffs in this case. And as against these plaintiffs the defendant did not waive the benefits of the act of 1849. See Thomas's Appeal, 19 P. F. Smith, 122; Seibert's Appeal, 23 P. F. Smith, 361. We, therefore order and direct the rule in this case discharged.

R. W. Archbald, Esq., for rule.

Messrs. D. & H. M. Hannah, *Contra.*

## CRIMINAL LAW.

LARCENY—PRESUMPTION OF GUILT FROM POSSESSION OF GOODS.—Conviction of larceny from a railroad car. The larceny was on September 14, 1877, and the chief evidence connecting the defendant with the larceny was several articles being found in January, 1878, on premises occupied by him, some of them in his bed. Search was made without success the day before, but on going again they were discovered in the bed. J. G., who occupied another part of the same house, and who had previously pleaded guilty to the same larceny, testified that he put the articles where they were found after the first search was made, and that respondent had nothing to do with them. *Held*, that the judge erred in not instructing the jury as requested, alone and unconnected with any other circumstance, affords but slight presumption of guilt. Possession of stolen property, if immediately subsequent to the larceny, may sometimes be almost conclusive of guilt. Walker v. People, 38 Mich. But the presumption weakens with the time that has elapsed, and may scarcely arise at all if others besides the accused have had equal access with himself to the place of discovery. Sup. Ct., Michigan, January, 1879. Gablich v. People. Opinion by Cooley, J.—*Albany Law Journal*.

VARIANCE—IDENTIFICATION OF DEFENDANT'S NAME.—The indictment under which the defendant was convicted charged him with murdering Robert Kain. There was no evidence in the record that the party killed was named "Robert Kain." He was called by the witnesses "Kain," only, without giving any Christian name. *Held*, that evidence would not support a conviction. The case is undistinguishable in principle from Davis v. The People, 19 Ill. 74, where it was held that such variance between the averment in the indictment and the evidence is fatal. In Shepherd v. The People, 72 Ill. 480. there was evidence describing the deceased by his vocation, that of barber, which unmistakably identified his name with that averred in the indictment. The judgment is reversed and

the cause remanded. Illinois Sup. Ct., *Penrod* v. *The People.*

——*Joint Indictment.*—Several persons were jointly in-, dicted in an indictment containing two counts; the first charging arson in the first degree, and the other in the second degree. When the case was called for trial four of the defendants appeared. and by leave of court the "State entered a *nolle pros* as to the first count of the indictment," and the defendants present pleaded guilty to the remaining count, and were sentenced accordingly. At another term, the remaining defendant went to trial on the indictment, on plea of not guilty, and the jury returned a verdict of guilty as charged in the first count. *Held,* the entry of the *nolle pros.* put an end to the first count as to all the defendants, leaving the indictment as though it had originally contained only the second count; and having been in jeopardy as to the second count, the defendants could not again be tried for that offense; but the first count having been put out of the indictment, there was nothing in it to authorize a verdict of guilty on that count, and though the jury found a verdict of guilty of that offense, the defendants were never in jeopardy under that charge, and could be again indicted and tried for arson in the first degree. Walker v. State, Sup. Ct., Ala.

PROMISE TO PAY THE DEBT OF ANOTHER.—A promise to pay the debt of another will not support an action. unless the promise be founded on a precedent liability or a new consideration. Where, however, by the arrangement between the creditor and the promisor, the original debtor is discharged, and a new debt created binding on the promisor alone, the promise, whether verbal or written, is supported by a valuable consideration—The detriment to the promisee in the extinguishment of the original debt —and will support an action, though no consideration moved from the original debtor to the promisor, and there was no privity between them. Overruling on last point, Williams v. Sims, 22 Ala. 512, Alabama Sup. Ct., Dec., 1878. Underwood v. Lovelace. Opinion by Brickell, C. J.